## The Salem and Hamburgh Turnpike Company *against* The town of Lyme.

After a turnpike company, incorporated by the legislature, with the right of erecting a gate thereon and taking tolls, had made their road, erected their gate, and were in the full enjoyment of their franchise, the select-men of the town through which the turnpike road passed, laid out a new road, nearly parallel with the turnpike road, and about seventy rods distant therefrom, connecting two public roads passing into the turnpike road, one about sixty rods above, and the other about twenty rods below, the gate, thus impairing the turnpike franchise, by furnishing travellers on the turnpike road with a convenient passage round the gate, by means of which they might avoid the payment of tolls. On a bill in chancery, brought by the turnpike company, against the town, to restrain them from opening such new road, it was held, that the plaintiffs' remedy was that provided by the 13th section of the statute relating to highways and bridges, and that a court of chancery had not jurisdiction of the cause.

The laying-out of a new road, under the authority of the legislature, which materially diverts the travel from a former one, under a prior charter, not exclusive in its terms, is not an unconstitutional act.

This was a bill in chancery for an injunction against the town of *Lyme*, restraining them from opening a certain new road in that town.

The bill stated the following case. Prior to the year 1824, there was no direct public highway from *Essex* ferry in the town of *Lyme*, through the town of *Salem*, to the city of *Norwich*. Such a highway being much needed for the public accommodation, the *General Assembly* of this state, holden in *May* 1824, incorporated the plaintiffs, and constituted them a body politic, for the purpose of constructing the turnpike road

*New-London,*
*July, 1847.*

Salem and
Hamburgh
Turnpike Co.
*v.*
Lyme.

leading from the *Essex* road, near the dwelling-house of *Josiah Morgan*, in *Lyme*, in an *Easterly* direction, through that town to *Salem*, and towards the city of *Norwich*, with certain powers and privileges, and among others, that of erecting and establishing on said road, within half a mile of the dwelling-house of *Joseph Marvin*, a full toll-gate for the collection of certain tolls, after said road and the bridges thereon should have been made and put in repair, to the acceptance of the commissioners on said road, and a certificate thereof given by them. This company was duly formed, according to their charter of incorporation, before the 1st day of *June* 1827, and made and put in good repair said road and the needful bridges in its course, at great expense to them, *viz.* 6000 dollars, before the 1st day of *November* 1828; which were accepted by the commissioners on said road, who gave a certificate thereof, before the 1st day of *November* 1828, *viz.* on the 1st of *November* 1827. On the 10th of *November* 1827, the plaintiffs, according to the provisions of their charter, erected and established on said road, and within half a mile of the dwelling-house of said *Joseph Marvin*, in the town of *Lyme*, a full toll-gate, for the collection of tolls, which they have ever since maintained at the same place, receiving a large amount of tolls thereat. And the plaintiffs have fully kept and performed all the requirements and conditions, by them on their part to be kept and performed, in order to entitle them to the privileges and franchises granted and secured to them, by their charter of incorporation. No other gate was authorized to be erected, nor was any other ever erected, on said road. The only valuable franchise, to the enjoyment of which the plaintiffs are entitled in consequence of their having made and put in repair said road and bridges, by which the public are greatly benefited, is the erection and maintenance of said turnpike gate, and the collection of the tolls payable thereat, as provided by their charter of incorporation. Of this valuable franchise they have been in the lawful and undisturbed enjoyment, for the space of more than eighteen years last past.

The plaintiffs' turnpike road runs from either side of the gate, for a considerable distance, in a *Northerly* and *Southerly* direction. About sixty rods *Northerly* of the gate is an old open town road, running from the turnpike road in a *Westerly* direction; and about twenty rods *Southerly* of the gate,

is another public open road, running from the turnpike road, in <span>*New-London*, July. 1847.</span> a *Westerly* direction, through the village of *Hamburgh* in Lyme. On the 9th day of *May* 1846, the select-men of the <span>Salem and Hamburgh Turnpike Co. *v.* Lyme.</span> town of *Lyme*, wrongfully and injuriously, and without any just cause, laid out and established a public highway, three rods wide, within that town, beginning at a point on said open public road so running from the turnpike road, as last above-mentioned, near the *Hayden* store, so called, in the village of *Hamburgh*, and running thence *Northerly*, nearly parallel with the turnpike road, and about seventy rods therefrom, to the old town road first above-mentioned, thereby establishing a public highway from the point aforesaid on the turnpike road *Northerly* of the gate, round the gate, to the aforesaid point *Southerly* of the gate. The doings of the select-men in laying out and establishing said highway, were, by the inhabitants of the town of *Lyme*, in legal meeting assembled, on the 18th day of *May* 1846, wrongfully and unjustly accepted and ratified. This new road has not yet been worked or opened, and the establishment of it, if it should be worked and opened, would enable persons traveling on the turnpike road, and others who would otherwise travel thereon, and who ought to pay tolls at said gate, wrongfully and injuriously to avoid said gate, and the payment of tolls thereat, with but little or no inconvenience to themselves, by taking said new route. The new road is not needed for the public accommodation or use. It was procured to be laid out, and was laid out and established, by the select-men, and ratified and approved by the inhabitants of the town as aforesaid, wrongfully and injuriously, to enable and induce, and it will enable and induce, persons traveling on the turnpike road, and others who ought to pay tolls at said gate, wrongfully and injuriously to avoid the same, and the payment of tolls thereat, in manner aforesaid. And there is good reason to believe, and the plaintiffs do believe and aver, that if the new road is worked and is opened, nearly all the public travel on the public road, and other travel which ought to pay tolls at said gate, will wrongfully and injuriously avoid the same, by taking said new route; and by means of the premises, great damage will result to the plaintiffs, by diminishing their tolls, which would otherwise accrue to them, and which they are legally entitled to demand and receive from

New-London,
July, 1847.

Salem and
Hamburgh
Turnpike Co.
v.
Lyme.

all persons traveling on the turnpike road, and by reducing, and perhaps entirely destroying, the value of the turnpike road to the plaintiffs, and by rendering their franchise worthless.

The town of *Lyme* is now intending and preparing to open and work said new road, and to pay the damages occasioned to individuals by laying out the same, and unless restrained and prevented, by the interposition of this honourable court, will work and open the same immediately.

To this bill there was a general demurrer ; and the case was reserved for the advice of this court upon the questions of law thus presented.

*McCurdy* and *Foster*, in support of the demurrer, contended, 1. That if the defendants were injured, there was adequate remedy at law ; and, of course, a court of chancery had no jurisdiction of the subject. Relief for the alleged grievance is specifically provided for by statute. If the road laid out by the select-men, be not of common convenience and necessity, as the plaintiffs allege concerning the road in question, the county court is authorized, on application for that purpose, to set aside the laying-out. *Stat.* 342. *tit.* 49. *c.* 1. *s.* 13. (ed. 1838.) *Windsor* & al. v. *Field*, 1 *Conn. R.* 279. *Commonwealth* v. *Westborough*, 3 *Mass. R.* 406. 7 *Conn. R.* 52. At any rate, a court of chancery will not exercise the extraordinary power of granting an injunction, until the statute proceeding has been resorted to.

2. That the plaintiffs took their charter subject to the general law regarding the laying-out of highways, and it must be construed accordingly. By the general law, the select-men were empowered to lay out new highways, in the manner that this was laid out. *Stat.* 339, 40. *tit.* 49. *c.* 1. *s.* 11. (ed. 1838.) If the plaintiffs were injured, they had the remedy provided by statute ; but if they did not choose to resort to *that*, they are entitled to no other.

3. That the grant to a turnpike company of the right of taking tolls, in the absence of any special contract on the subject, is not *exclusive*. The legislature are not precluded from opening new channels of communication, as the varying exigencies of the public may require. They may authorize a new turnpike road, or a rail-road, to be laid parallel with one

previously granted and made, without infringing any vested rights. *Charles River Bridge* v. *Warren Bridge*, 11 *Peters* 420.

New-London.
July, 1847.

Salem and
Hamburgh
Turnpike Co.
*v.*
Lyme.

*Ingham*, contra, contended, 1. That the record shows a violation of the plaintiffs' franchise. Here it is to be borne in mind, that while their charter remains in force and without alteration, the grant is to have the same effect as though it were absolute and irrevocable. Now, the legislature, in consideration of the expense of making the road, have granted to the plaintiffs the right of taking certain tolls for their indemnity. The select-men of *Lyme*, not a party to the grant, go upon the plaintiffs' road until they come near the gate, then open a new road round the gate, and come in upon the plaintiffs' road again, using the new road only to avoid the gate. It appears that this new road is not of common convenience and necessity—no public exigency requires it—and if opened, the effect will be. as every man of common sense knows it *must* be, to diminish the tolls and render the plaintiffs' franchise worthless. And this is to be done too, without compensation. The injury is not merely *incidental*, such as often results from the growth of one place or the decay of another, from changes in public conveyances, &c., but the record shows, that the new road was laid out by the select-men, wrongfully and injuriously, *for the purpose* of drawing travel away from the plaintiffs' gate—*i. e.* private property is taken, not for public use, but to accomplish private ends.

2. That the statute relating to highways and bridges, has provided no remedy for an injury of this nature. The persons referred to in the 13th sect. as "aggrieved by the doings of the select-men," are "the owners of the land through which the road is laid out," mentioned in the 11th sect. *They*, on application to the county court, may obtain redress, in two respects—first, in laying out the road over the land of the complainants—and secondly, by an inadequate assessment of damages. Here the powers of the county court terminate. But if otherwise, it could only redress injuries *actually sustained :* it could not guard against impending injuries.

3. That the interposition of a court of chancery, by way of injunction, is the proper, and the only effectual, remedy. The object of this suit, is not to obtain redress for *past* inju-

*New-London,*
*July, 1847.*

Salem and
Hamburgh
Turnpike Co.
*v.*
Lyme.

ries, but protection against *coming* injuries.   This is the sort of relief that the case calls for ;  and this it is perfectly competent for a court of chancery to grant.   2 *Sw. Dig.* 140, 1.   *The Newburgh Turnpike Company* v. *Miller,* 5 *Johns. Ch. R.* 101.   7 *Conn. R.* 48.   17 *Conn. R.* 55.

ELLSWORTH, J.   This case, upon the facts stated, and, for the purposes of a trial, admitted by the demurrer, would seem, at first view, to be one proper for the interposition of a court of equity.   But the difficulty is, the plaintiffs have relief, if any they are entitled to, under the 13th section of the " act relating to highways and bridges."   The new road complained of, is no part of the turnpike road, nor of the exact franchise granted to the turnpike company.   Although it is nearly parallel with it, connecting two existing roads, and thus furnishing some facility for avoiding the toll-gate, it neither begins nor ends on the road, nor passes over any portion of it.   It may somewhat, and very greatly, impair the value of the plaintiffs' franchise, as is the effect in numerous cases, where a parallel new road, canal, or bridge, or a rail-road, is made between the same points, or near them.   If the public travel requires new or improved facilities, it is the right, if not the duty, of public servants to make them, or allow them to be made.   This is the well known condition upon which the plaintiffs took their charter ;  and they cannot complain, if " common convenience and necessity" require a new road. Who is to settle this question ?

We think that it belongs, first, to the select-men ;  if they act, then to the inhabitants of the town in legal meeting assembled ;  and finally, to the county court ;  all and each of whom, it must be presumed, will act intelligently and honestly.   The statute vests in them the entire and exclusive power, upon the idea probably, that these domestic tribunals can be most safely and wisely trusted with it.

The select-men of *Lyme,* and after them, the inhabitants of the town, have found, that this new road is needful ;  and no appeal was taken, as might have been taken, to the county court, for a review.   Can we now say, the road is not needful, without assuming a jurisdiction belonging to others ?   Can we try this matter over anew ?   Shall it be done by committee, or otherwise ?   We think the question has been fully and

finally settled, whether wisely or unwisely ; and we cannot <span style="float:right"><em>New-London,</em><br>July, 1847.</span> doubt, if the new road was not " needful," the county court, at least, would have set aside the doings of the select-men.

It is true, by the demurrer, the defendants admit a clear nuisance and gross wrong ; but we think the demurrer fairly raises the question of jurisdiction, as in the case of a bill brought on a note of hand, a demurrer would not preclude, but would be a proper mode of raising, the question of jurisdiction.

Since the decision of this court in the case of *The Enfield Toll Bridge Company* v. *The Hartford and New-Haven Rail-road Company,* 17 *Conn. R.* 454. and of the supreme court of the *United States,* in the case of *The Charles River Bridge* v. *The Warren Bridge,* 11 *Peters* 500., and the numerous decisions to the same effect, cited in those cases, we do not think it an open question, whether a new road, canal, or bridge, materially diverting travel or business from an old one under a prior charter, is therefore unconstitutional, or to be suppressed. New facilities for public accommodation must be created as they are needed. The legislature, or subordinate tribunals by the legislature entrusted with the discretion, must judge wisely and fairly on the subject ; and here we must leave this discretion. In cases where a line of travel is given in a previous charter ; or where the franchise is defined, or made exclusive ; or where some portion of the exact thing given before, is taken ; it may be, that, by reason of peculiar provisions in a charter, the legislature may be concluded ; or if not, that damages may be assessed, as in other cases where private property is taken for public use. The present case does not belong to this class.

We advise that the bill is insufficient.

In this opinion the other Judges concurred, except W<small>AITE</small>, J., who gave no opinion, being an inhabitant of the town of *Lyme.*

<div style="text-align:center"><strong>Bill dismissed.</strong></div>